**IN THE COURT OF APPEALS OF IOWA**

No. 21-0147
Filed April 14, 2021

**IN THE INTEREST OF A.S. and A.B.,**
**Minor Children,**

**V.B., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Webster County, Joseph L. Tofilon, District Associate Judge.

A mother appeals the termination of her parental rights to two children. **AFFIRMED.**

Alesha M. Sigmeth Roberts of Sigmeth Roberts Law, PLC, Clarion, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Sarah J. Livingston of Thatcher & Livingston, P.L.C., Fort Dodge, attorney and guardian ad litem for minor children.

Considered by Mullins, P.J., Schumacher, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**BLANE, Senior Judge.**

A mother appeals the termination of her parental rights to two children. We find the State proved the statutory grounds for termination existed, termination was in the children's best interests, and additional time is not warranted. We affirm.

## I. FACTS AND PRIOR PROCEEDINGS.

This family came to the attention of the department of human services (DHS) upon reports the mother was using methamphetamine while caring for the children. The children were five and one year old at the time. At the time of their removal from the mother, the family was homeless. The mother often left the children with a family friend, on one occasion for four months. The children were initially placed with the family friend and later with a foster family. When the first family had to move out of state, they were placed with a second foster family, who have become a pre-adoptive home.

After removal, the DHS began providing the family services. In a "contract of expectations," the mother agreed to pursue certain goals to reduce the safety concerns and risk factors that prevented reunification with her children. Among other promises, she agreed to:

- establish a stable residence appropriate for children;

- maintain her sobriety;

- complete a substance-abuse evaluation and treatment and follow all recommendations;

- complete a mental-health evaluation and follow all recommendations;

- participate in in-home services including attending visitation and working to obtain parenting skills; and

- refrain from illegal activities.

At the time of the termination hearing, the mother had obtained a stable home, which her parents purchased for her. It was furnished and appropriate for the children. But even after obtaining this residence, the mother had problems letting people live in her house who were not appropriate or approved to be around the children, including people with open child-welfare cases. The mother reported these people damaged her house, including breaking her front and back doors, making the locks inoperable. But she never made a police report and only removed these people at DHS's insistence.

The mother has a troubled and persistent history with substance abuse. She acknowledged to service providers that she continued to use methamphetamine throughout the case. She testified she has not maintained sobriety for longer than a month since DHS became involved. The family support specialist (FSS) reported her repeated attempts to get the mother to attend a substance-abuse evaluation by offering her rides, setting up appointments, and other support. The mother repeatedly blew off the appointments or made excuses for not going. Other times, the mother began some type of treatment and then failed to comply with requirements or to appear for regular services.

DHS also asked the mother to submit to regular drug testing, requesting over twenty such tests during the proceedings. The mother did not comply, failing to show up for most of the tests. When she did test, twice she was negative for all substances, but three times the results were positive. Two weeks before the termination hearing, the mother's drug test was positive for methamphetamine. And two days before the termination hearing, during a visitation, the mother

informed the FSS worker her skin patch would be positive for methamphetamine because she had been using.

The mother also had not completed a mental-health evaluation, despite repeated encouragement and assistance from the FSS and DHS social worker. The mother told DHS she wanted to focus on her substance-abuse issues first but made no real progress on that either. The DHS social worker continued to have concerns about the mother's mental health because, about a month before the termination hearing, she expressed suicidal ideation to the social worker.

The mother has consistently attended visits with the children, missing very few. But the FSS reported the mother is occasionally late or unprepared and relies too much on others during her parenting time. The mother was never able to move beyond supervised visitations. There had been no trial home stays. The FSS and DHS worker acknowledged a bond between the mother and children and believed they loved each other. But both said the family's affectionate greetings at visitations quickly gave way to greater interest in toys and snacks. The FSS testified the mother "doesn't actually interact with [the children] very much during the visits, she just watches them play."

Both children have struggled with being moved in and out of placements during the case but are doing well in their current foster home. They both have mental-health diagnoses, and the older child has an individualized education program at school. He is attending therapy and working on addressing trauma-related behavioral and anger issues. The foster parents are working with him to develop good strategies for addressing those issues. The DHS social worker testified the children are bonded to the foster family. The foster parents maintain

a routine for them and help them with doctor and therapy appointments, schooling, and visitations.

The State petitioned to terminate parental rights when the children had been out of the mother's care for one year. A.S. was six years old at the time of the termination hearing, and A.B. was two. After a hearing, the juvenile court terminated her rights, pursuant to Iowa Code section 232.116(1)(f) (2020) as to the older child, and section 232.116(1)(h) as to the younger. The mother appeals.[1]

## II. SCOPE OF REVIEW.

"We review child-welfare proceedings de novo." *In re A.H.*, 950 N.W.2d 27, 33 (Iowa Ct. App. 2020). "The juvenile court's fact findings do not bind us, but we give them weight, particularly with regard to credibility." *Id.* "Our primary concern is the best interests of the children." *Id.*

## III. ANALYSIS.

At the outset, we must clarify the issues raised on appeal. "We use a three-step analysis to review termination of parental rights" cases. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). First, we determine whether the ground for termination under section 232.116(1) has been established. *See* Iowa Code § 232.116(1); *A.S.*, 906 N.W.2d at 472–73. Then, we determine whether the termination is in the children's best interests. *See* Iowa Code § 232.116(2); *A.S.*, 906 N.W.2d at 473. Finally, we consider whether any of the additional statutory

---

[1] The juvenile court also terminated the rights of a legal father and a putative father. The fathers do not participate in this appeal.

factors apply to preclude termination. *See* Iowa Code § 232.116(3); *A.S.*, 906 N.W.2d at 473.[2]

In her petition, the mother argues it is not in the children's best interests to terminate her parental rights but she does not cite Iowa Code section 232.116(2). Instead, she cites the statutory grounds for termination under Iowa Code section 232.116(1), paragraphs (f) and (h), and, in addition, discusses best interests generally. We find she raised both issues and proceed to address the merits.

## A. Statutory Grounds for Termination.

The juvenile court found sufficient evidence to terminate the mother's parental rights pursuant to Iowa Code section 232.116(1), paragraph (f) for A.S., and paragraph (h) for A.B. The mother appears to challenge only one element that both paragraphs share: the requirement that the State prove "at the present time the child[ren] cannot be returned to the custody of the child[ren's] parents." Iowa Code § 232.116(1)(f)(4), (h)(4). In her petition on appeal, the mother contends it is in the children's best interests to be returned to her custody. "[A] child cannot be returned to the custody of the child's parent . . . if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication." *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992). "The threat of probable harm will justify termination, and the perceived harm need not be the one that supported the child's initial removal from the home." *Id.*

Unfortunately, in this case, the initial grounds for removal still exist because the mother has not addressed her persistent substance-abuse problem. This was

---

[2] The mother does not request application of one of the exceptions to termination, so we need not address this step. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

one of the main goals in her contract of expectations. Yet, she admitted to using methamphetamine right through the proceedings. *See In re J.S.*, 846 N.W.2d 36, 42 (Iowa 2014) ("[A] juvenile court could reasonably determine that a parent's active addiction to methamphetamine is 'imminently likely' to result in harmful effects to the physical, mental, or social wellbeing of the children in the parent's care." (citation omitted)). She mostly refused to test, and gave three positive drug tests. She repeatedly made promises to seek treatment and never successfully did so—the farthest she got was completing a substance-abuse evaluation and attending a couple appointments. She made even less progress in required mental-health therapy. The mother insists she wants to pursue mental-health therapy in her own time once she competes substance-abuse treatment, but has made practically no progress in those requirements. This ground alone is enough for the State to show the children cannot safely be returned to the mother. We find the State proved the statutory grounds for termination.

## B. Best Interests.

The mother next argues termination is not in the children's best interests. In making the best-interests determination, we give primary consideration to the children's safety, the best placement for furthering their long-term nurturing and growth, as well as their physical, mental, and emotional condition and needs. Iowa Code § 232.116(2); *see P.L.*, 778 N.W.2d at 37. Safety and the need for a permanent home mark the "defining elements" in a child's best interests. *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially).

The children have been continuously out of the home for over a year. The mother has not made enough progress in her substance-abuse or mental-health

condition to resume their care. With the passing of that statutory mile-marker, we must view the case with a sense of urgency. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000); *see also* Iowa Code § 232.116(1)(f)(3) (setting the timeline for termination), (h)(3) (same).

The DHS and FSS providers testified the children are confused and anxious about their living situation and who will take care of them to the point of consistently calling the FSS worker "mom," even when corrected. They have been moved through three different homes during this case, and are finally established in a safe and stable home with the foster family. The foster family has diligently tended to their specific needs. The mother insists it is not her fault DHS moved the children several times. But it is the mother's continued failure to become a safe parent so as to meet the children's needs that has prevented their reunification. Here, the children's best interests compel termination of the mother's rights. The best opportunity for the children's long-term safety is to terminate the mother's parental rights and pursue adoption into a permanent home.

## C. Six-Month Extension.

Next, the mother argues the juvenile court should have given her additional time to work toward reunification. To grant an extension of six months, under Iowa Code section 232.104(2)(b), the court must determine the need for removal will no longer exist at the end of that time. *In re A.A.G.*, 708 N.W.2d 85, 89 (Iowa Ct. App. 2005). The mother points out that she has her own home, which DHS agrees is suitable for the children, she has removed unsafe people from the home, she has consistently attended visitation with no significant safety concerns being noted,

has completed a substance-abuse evaluation, and is motivated this time to change.

But the record does not show significant or even moderate progress, on the most crucial factor in this case: the mother's addiction issues. Instead the record reflects twelve or more months of excuses and deflections for obtaining treatment and working toward sobriety. There is no reason to believe the next six months would be different. In this case, further patience with the mother would "translate into intolerable hardship for" the children. *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). We agree with the juvenile court that a six-month extension is not warranted.

**AFFIRMED.**